**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, *et al.*, | * |
| Plaintiffs, | * |
| v. | Case No.: GJH-19-476 |
| T & L COMMUNICATIONS, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The trustees of five employee benefit plans for workers in the automatic sprinkler industry ("Plaintiffs") bring this action against Washington corporation T & L Communications, Inc. ("T & L") and two of its governors, Catherine L. Bushaw and Chief Executive Officer Lawrence E. Bushaw (collectively "Defendants"), seeking unpaid contributions to the plans. Plaintiffs seek remedies under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 *et seq.*, and the terms of a collective bargaining agreement and a settlement agreement and promissory note. Following Defendants' failure to answer or otherwise defend in this action, the Clerk entered their default on August 8, 2019. Now pending is Plaintiffs' Motion for Default Judgment against Defendants pursuant to Federal Rule of Civil Procedure 55(b). ECF No. 8. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the following reasons, Plaintiff's Motion for Default Judgment will be granted.

1

**I.     BACKGROUND**

The following facts are established by the Complaint, ECF No. 1-6, and declarations and accompanying exhibits filed in support of the Motion for Default Judgment, ECF Nos. 8-2, 8-4, 8-5, 8-6, 8-7, 8-8, 8-9, 8-10, 8-11, 8-12, 8-13, 8-14, 8-15, 8-16. T & L is a corporation organized under the laws of the State of Washington that transacts business there as a contractor or subcontractor in the sprinkler industry and at all times relevant here was an "employer" operating in an "industry affecting commerce" as defined by ERISA, 29 U.S.C. §§ 1002(5), (11), (12), and the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §§ 142(1), (3), 152(2). ECF No. 1-6 ¶ 2. Defendant Lawrence Bushaw is the Chief Executive Officer and a Governor of T & L and a resident of the state of Washington. *Id.* ¶ 3. Defendant Catherine Bushaw is also a Governor of T & L and a Washington resident. *Id.* ¶ 4.

On June 3, 2014, T & L entered into an agreement (the "2014 Agreement") with non-party Road Sprinkler Fitters Local Union No. 669 ("Local 669") that bound T & L to the terms and conditions of a 2013 collective bargaining agreement (the "2013 CBA") between the National Fire Sprinkler Association, Inc. and Local 669. *Id.* ¶ 6; ECF No. 8-4 ¶¶ 2–3; ECF No. 8-5. The 2013 CBA, which was in force from April 1, 2013 until March 31, 2016, required signatory employers to submit reports and make contributions to the employee benefit funds whose trustees are Plaintiffs in this action: the National Automatic Sprinkler Industry Welfare Fund ("Welfare Fund"); the National Automatic Sprinkler Industry Pension Fund ("Pension Fund"); the NASI-Local 669 Industry Education Fund (also known as the National Automatic Sprinkler Local 669 UA Education Fund) ("Education Fund"); the Sprinkler Industry Supplemental Defined Contribution Pension Fund (also known as the Sprinkler Industry Supplemental Pension Fund) ("SIS Fund"); and the United Association International Training

Fund ("Training Fund"). ECF No. 1-6 ¶ 1; ECF No. 8-4 ¶ 4; ECF No. 8-6 at 3–4, 30–36.[1] Together, the funds are known as the "NASI Funds." ECF No. 1-6 ¶ 1.

The 2013 CBA also bound T & L to the terms of the Restated Trust Agreements establishing the NASI Funds ("Trust Agreements"), which have similar structures and content. ECF No. 8-4 ¶ 7; ECF Nos. 8-9, 8-10, 8-11, 8-12, 8-13. Each Trust Agreement includes a provision stating, with some immaterial variations between the Agreements, that "[t]he Trustees have the discretion to adopt such rules and procedures concerning payments to the Fund, audits, liquidated damages and to enforce the collection of delinquent contributions as they determine to be necessary." ECF No. 8-9 at 25; ECF No. 8-10 at 22; ECF No. 8-11 at 24; ECF No. 8-12 at 23; ECF No. 8-13 at 28. Pursuant to that authority, the Trustees of the NASI Funds adopted a set of "Guidelines for Participation in the Sprinkler Industry Trust Funds" ("Guidelines"). ECF No. 8-4 ¶ 9; ECF No. 8-14. In a declaration in support of Plaintiffs' Motion for Default Judgment, Michael W. Jacobson, the administrator of the NASI Funds, states that he mails a copy of the Guidelines to every contractor when it becomes a signatory to a collective bargaining agreement, along with a letter explaining the purpose of the Guidelines. ECF No. 8-4 ¶ 10; ECF No. 8-15. T & L employed workers covered by the 2013 CBA beginning in November 2013. ECF No. 1-6 ¶ 8; ECF No. 8-4 ¶ 11.

On April 1, 2016, a new collective bargaining agreement between the National Fire Sprinkler Association, Inc. and Local 669 ("2016 CBA") took effect with a term extending to March 31, 2021. ECF No. 8-4 ¶ 6; ECF No. 8-8. The 2016 CBA renewed the obligations of signatory employers to contribute to the NASI Funds and set monthly contribution rates for each fund per hour worked by an employer's covered employees. ECF No. 8-8 at 30–39. The rates

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

effective January 1, 2019 were $10.02 per hour worked for the Welfare Fund; $6.60 per hour for the Pension Fund; $0.42 for the Education Fund; $0.10 for the Training Fund; and $5.88 for the SIS Fund. *Id.* at 31–36; ECF No. 1-6 ¶ 15; ECF No. 8-4 ¶ 18. Effective April 1, 2019, the rate for the SIS Fund rose to $7.23 per hour. ECF No. 8-4 ¶ 18.

Each of the Trust Agreements provides a methodology that the Funds can use to determine the contributions owed when an employer fails to submit remittance reports for a particular month. Each Agreement states, with immaterial variations, as follows:

> Where an Employer is two or more months delinquent in making the contributions required on behalf of his Employees and has not submitted the required documents showing the Employees who worked for him and the hours worked, the Trustees may project as the amount of the delinquency the greater of (a) the average of the monthly payments or reports submitted by the Employer for the last three (3) months for which payments or reports were submitted, or (b) the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted.

ECF No. 8-9 at 25–26; ECF No. 8-10 at 22–23; ECF No. 8-11 at 24; ECF No. 8-12 at 23; ECF No. 8-13 at 28–29.

The Trust Agreements further provide that the projection

> may be used as a determination of payments due for each delinquent month, and may be used for purposes of any lawsuit, and no other proof need be provided by the Trustees to any court or arbitrator to compute the total payments due from the Employer for all delinquent months, exclusive of liquidated damages, interest, attorneys' fees and other costs.

ECF No. 8-9 at 26; ECF No. 8-10 at 23; ECF No. 8-11 at 24–25; ECF No. 8-12 at 23–24; ECF No. 8-13 at 29. The Trust Agreements finally provide that "[a]ll reasonable expenses" incurred by the Trusts to enforce the payment of amounts due, including "reasonable attorneys fees, accountants' or auditors' fees, and court costs will be added to the amount owed by the

4

delinquent Employer." ECF No. 8-9 at 25; ECF No. 8-10 at 22; ECF No. 8-11 at 23; ECF No. 8-12 at 22; ECF No. 8-13 at 27–28.

The Trust Agreements also specify the liquidated damages to which the Funds are entitled when an employer fails to pay contributions. ECF No. 8-9 at 24; ECF No. 8-10 at 21; ECF No. 8-11 at 23; ECF No. 8-12 at 22; ECF No. 8-13 at 27. The Welfare, Pension, Education, and SIS Fund Trust Agreements identically specify that: (1) payments and completed reporting forms are due for each month by the fifteenth day of the following month; (2) liquidated damages of 10 percent of the amount due for each month are assessed if payment is not received by that due date; (3) an additional 5 percent is assessed if payment is not received by the first day of the following month; and (4) an additional five percent is assessed if payment is not received by the fifteenth day of the following month. ECF No. 8-9 at 24; ECF No. 8-10 at 21; ECF No. 8-11 at 23; ECF No. 8-12 at 22. These provisions are restated in the Guidelines. ECF No. 8-14 at 7. The Trust Agreement for the Training Fund imposes the same deadline for reports and contributions but provides that the greater of 20 percent of the amount due or twenty dollars will be assessed in liquidated damages if the employer fails to file a report or make its contribution within ten days of the due date. ECF No. 8-13 at 27. Therefore, all of the Trust Agreements impose a liquidated damages penalty of 20 percent of the amount due if the employer fails to pay by the fifteen day of the month following the due date.

The Trust Agreements and Guidelines also entitle the NASI Funds to interest on unpaid contributions. Each of the Trust Agreements provides that the rate of interest shall be at a rate determined by the trustees of each Fund. ECF No. 8-9 at 24; ECF No. 8-10 at 21; ECF No. 8-11 at 23; ECF No. 8-12 at 22; ECF No. 8-13 at 27. The Guidelines specify that when the Funds file suit to collect unpaid contributions, interest on the contributions shall be calculated at the rate of

12% or the highest rate permitted by law. ECF No. 8-14 at 7. The Guidelines also state that the delinquent employer will also be liable for the Funds' attorneys' fees and court costs in such an action. *Id.*

Over time, T & L began to experience substantial difficulty in making the contributions that it owed to the NASI Funds. ECF No. 1-6 ¶ 9. On April 4, 2018, the NASI Funds filed suit against T & L seeking unpaid contributions revealed by an audit of T & L's records covering the period from November 1, 2013 until June 30, 2016, as well as contributions that T & L failed to pay for the months of December 2017, January 2018, and February 2018. ECF No. 8-7 at 1; Complaint, *Trs. of the Nat'l Automatic Sprinkler Ass'n v. T&L Commc'ns, Inc.*, No. TDC-18-974, (D. Md. Apr. 4, 2018), ECF No. 1.

On May 29, 2018, the parties to that action entered into a settlement agreement ("Settlement Agreement") and promissory note allowing for systematic payment over time of all amounts owed to the NASI Funds. ECF No. 8-4 ¶ 5; ECF No. 8-7. The parties agreed that T&L owed contributions totaling $56,688.28 revealed by the audit, $70,526.01 in contributions for December 2017 through March 2018, and liquidated damages and interest for late-paid contributions for several months in 2016 and 2017 totaling $60,272.32, as well as costs and attorneys' fees, for a total amount owed of $205,421.94. ECF No. 8-7 at 1–2. While the NASI Funds agreed to waive the liquidated damages, T & L agreed to pay a principal sum of $145,149.62 to the NASI Funds, plus 7 percent interest per annum, in 36 monthly payments, for a total payment of $161,344.76. *Id.* at 2–3, 7–8, 10; ECF No. 8-4 ¶ 12.

The Settlement Agreement also included several other provisions. First, T & L agreed to timely submit all future monthly reports and pay all monthly contributions to the NASI Funds during the repayment period. ECF No. 8-7 at 3; ECF No. 8-4 ¶ 12. Second, Defendants

Lawrence Bushaw and Catherine Bushaw agreed to personally guarantee all terms of the Settlement Agreement, including the payments of principal and interest owed to the NASI Funds for past contributions and all future contributions to the Funds for the duration of the settlement. ECF No. 8-7 at 4; ECF No. 8-4 ¶¶ 12–13. Third, T & L agreed to continue being a contributing employer to the NASI Funds for the duration of the Settlement Agreement and to designate the National Fire Sprinkler Association to act on its behalf with respect to bargaining a successor CBA with Local 669. ECF No. 8-7 at 5. That provision had the effect of binding T & L to the 2016 CBA and the Trust Agreements for each of the NASI Funds. ECF No. 8-4 ¶ 6. Finally, T & L agreed that if it failed to follow any term of the Settlement Agreement, including by failing to make any of its scheduled payments or contributions, the NASI Funds could immediately declare the entire principal amount unpaid, reassess the liquidated damages, and commence collection efforts. ECF No. 8-7 at 4–5. T & L agreed that in the event of any suit to enforce payment of the promissory note, Lawrence and Catherine Bushaw would be jointly and severally liable to pay costs and attorney's fees. *Id.* at 5.

T & L defaulted on its responsibilities under the Settlement Agreement by failing to make complete contributions due to the NASI Funds for the months of July 2018 through December 2018, though it submitted remittance reports for those months showing that it owes the NASI Funds $30,881.59 for that period, an amount that is now late. ECF No. 1-6 ¶¶ 12, 17; ECF No. 8-4 ¶ 15, 21. Additionally, though the partial contributions that T & L made for some of those months were paid on time, partial contributions that T & L made for the months of August 2018 through November 2018 were paid late. ECF No. 1-6 ¶ 16; ECF No. 8-4 ¶ 20. Specifically, the contributions for those months were paid on October 29, 2018, November 14, 2018, December 3, 2018, and January 10, 2019, respectively. T & L then entirely failed to pay contributions or file

7

remittance reports for the months of January 2019 through April 2019. ECF No. 1-6 ¶ 13; ECF No. 8-4 ¶ 16. Finally, T & L defaulted on the Settlement Agreement by failing to make monthly settlement payments due from January 15, 2019 through May 15, 2019. ECF No. 1-6 ¶ 11; ECF No. 8-4 ¶ 14.

Plaintiffs filed this action on February 15, 2019. ECF No. 1-6. Defendants failed to appear and Plaintiffs moved for entry of default by the Clerk on May 21, 2019. ECF No. 7. The same day, Plaintiffs filed a Motion for Default Judgment with supporting materials, including the declaration of Michael W. Jacobson. ECF Nos. 8, 8-4. Jacobson declares that subsequent to the filing of this action, Plaintiffs were successful in collecting $25,000.00 on a bond claim which they have now applied to the amounts owed by T & L to the NASI Funds. ECF No. 8-4 ¶ 19. The Clerk of the Court entered Defendants' default on August 8, 2019. ECF No. 9.

## II. STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *Choice Hotels Int'l, Inc. v. Savannah Shakti Corp.*, No. DKC-11-0438, 2011 WL 5118328, at *2 (D. Md. Oct. 25, 2011) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

8

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422; *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (noting that "[t]he defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact," which provide the basis for judgment). Upon a finding of liability, "[t]he court must make an independent determination regarding damages . . . ." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013). Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "affidavits or documentary evidence in the record to determine the appropriate sum." *Int'l Painters & Allied Trades Indus. Pension Fund*, 919 F. Supp. 2d at 684 (citing *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010)).

## III. DISCUSSION

The Court has subject matter jurisdiction over this action pursuant to Section 502 of ERISA, 29 U.S.C. §§ 1132, and Section 301 of LMRA, 29 U.S.C. § 185. Venue is proper under 29 U.S.C. §§ 1132(e)(2) and 29 U.S.C. § 185(a) because the NASI Funds are administered in Maryland. ECF No. 1-6 ¶ 1; *see Trs. of Nat'l Asbestos Workers Pension Fund & Med. Fund v. Lake Erie Insulation Co.*, 688 F. Supp. 1059, 1060 (D. Md. 1988); *Trs. of Nat'l Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Prot., Inc.*, 578 F. Supp. 94, 95 (D. Md. 1983).

Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Camelot Constr., Inc.*, No. 1:14-CV-161-LMB-TRJ, 2015 WL 13050031, at *3 (E.D. Va. Apr. 14, 2015). Additionally, the LMRA "authorize[s] parties to enforce the provisions of their collective bargaining agreements." *Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, No. ELH-11-832, 2011 WL 5151067, at *3 (D. Md. Oct. 27, 2011).

Plaintiffs bring this action to enforce the terms of the Trust Agreements and the CBA, as well as their Settlement Agreement and promissory note with Defendants. ECF No. 1-6 ¶ 5. Beginning first with the Settlement Agreement and promissory note, Plaintiffs seek $179,526.64 "for contributions and reinstated liquidated damages currently owed under the settlement documents." ECF No. 1-6 ¶ 11; ECF No. 8-4 ¶ 4. Specifically, Plaintiffs maintain that Defendants owe $119,254.32 of the original principal amount of $145,149.62 owed under the Settlement Agreement and promissory note, as well as the reinstated $60,272.32 in liquidated damages, totaling $179,526.64. ECF No. 8-16. Because these obligations originally arise from the Trust Agreements and CBA, and in light of the plain terms of the Settlement Agreement and promissory note, Plaintiffs are entitled to $179,526.64 for breach of the Agreement and the note.

Plaintiffs next seek $52,020.44 in unpaid contributions, which is the result of subtracting the $25,000 bond claim that Plaintiffs have recovered from Defendants from the sum of the $30,881.59 in unpaid contributions that T & L reported for July 2018 through December 2018 and $46,138.85 in unpaid contributions that Plaintiffs estimate are owed for January through April 2019. ECF No. 1-6 ¶ 12; ECF No. 8-4 ¶¶ 18–19; ECF No. 8-16. Plaintiffs reach the amount of estimated contributions owed based on an estimated 493.8 hours of work per month, calculated by averaging the 444.5, 573, and 464 hours of work reported by T & L for the months

of October, November, and December 2018. ECF No. 1-6 ¶ 15; ECF No. 8-4 ¶ 18. That calculation is consistent with the method for estimating hours worked established by the Trust Agreements. ECF No. 8-9 at 25–26; ECF No. 8-10 at 22–23; ECF No. 8-11 at 24; ECF No. 8-12 at 23; ECF No. 8-13 at 28–29.

The Court pauses to note that Plaintiffs' Complaint, filed in February 2019, only estimated unreported hours and unpaid contributions for January 2019, while Plaintiffs' Motion for Default Judgment and the Jacobson Declaration estimate and seek unpaid contributions for February, March, and April 2019 as well. ECF No. 8-1 at 2; ECF No. 8-4 ¶¶ 16–18; ECF No. 8-16. Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The Court will permit the addition of damages for February through April 2019 here, however, because they do not differ in kind from the damages specifically requested in the Complaint, and the Complaint explicitly sought "all contributions and liquidated damages which become due subsequent to the filing of this action." ECF No. 1-6 at 7; *see Trs. of the Bricklayers Local 1 of MD, VA, and DC Health & Welfare Fund v. WW Reid Masonry, LLC*, No. GJH-16-2328, 2016 WL 4595674, at *5 (D. Md. Sept. 2, 2016) (explaining that Rule 54(c) "does not preclude an award of damages that accrued during the pendency of the action [where] such damages were explicitly requested in the complaint, and sufficiently established by the affidavits submitted by plaintiffs." (quoting 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2663 (3d ed. 1998)).

Using their estimate of 493.8 hours of work for the months of January to April 2019, Plaintiffs assert that they are entitled to $4,948.21 for each month in contributions to the Welfare Fund (using the $10.02 per hour contribution rate set by the 2016 CBA), $207.41 per month for the Education Fund at its $0.42 per hour rate, $3,259.30 per month for the Pension Fund at $6.60

11

per hour, $49.38 per month for the Training Fund at $0.10 per hour, and $2,903.84 per month for January, February, and March 2019 for the SIS Fund at $5.88 per hour and $3,570.42 for April 2019 at the rate of $7.23 per hour. ECF No. 8-16. Plaintiffs also assert that Defendants owe $21,880.35 in unpaid Welfare Fund contributions for July 2018 through December 2018, $4,691.20 in unpaid Pension Fund contributions for October through December 2018, and $4,310.04 in unpaid SIS Fund contributions for that period, which together comprise the $30,881.59 in reported but unpaid contributions that Plaintiffs request. *Id.*

Assuming the truth of the Complaint's well-pleaded allegations about Defendants' failure to pay these contributions to the NASI Funds, as permissibly augmented in the Motion for Default Judgment, Plaintiffs have established Defendants' liability for these unpaid contributions under the 2016 CBA, the Trust Agreements, Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(2), and Section 301 of LMRA, 29 U.S.C. § 185(a). 29 U.S.C. § 1132(g)(2) states that in any action brought to enforce the payment of delinquent contributions to a plan under 29 U.S.C. § 1145, and in which a judgment in favor of the plan is awarded, the court shall award the plan:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>   i. interest on the unpaid contributions, or
>   ii. liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); *see also Int'l Painters & Allied Trades Indus. Pension Fund*, 919 F. Supp. 2d at 686; *Bd. of Trs. Sheet Metal Workers' Nat'l Pension Fund v. Columbus Show Case Co.*, No. 1:14-cv-478, 2014 WL 3811252, at *4 (E.D. Va. Aug. 1, 2014); *Trs. of Plumbers &*

*Pipefitters Nat'l Pension Fund v. Lake Side Plumbing & Heating, Inc.*, No. 1:12-CV-00298 LO/IDD, 2012 WL 6203001, at *4 (E.D. Va. Nov. 20, 2012). 29 U.S.C. § 185(a) does not direct specific damages for violations of a collective bargaining agreement, but grants standing to third-party beneficiaries of such an agreement to bring an action to enforce its terms and seek remedies for its breach. *Int'l Painters & Allied Trades Indus. Pension Fund v. H.C. Ackerman & Son, Inc.*, No. JKB-11–2117, 2012 WL 251963, at *2 (D. Md. Jan. 24, 2012). By operation of these provisions and the private agreements that the parties have entered, Plaintiffs are entitled to $52,020.44 in unpaid contributions.

Plaintiffs next seek $14,235.83 in liquidated damages assessed on late contributions for the months of July 2018 through March 2019. ECF No. 8-4 ¶ 23; ECF No. 8-16. Disaggregating this amount, Plaintiffs seek liquidated damages of: (1) 20 percent of the late-paid contributions for July and August 2018, which were paid after the fifteenth of the month after their due date; (2) 15 percent of the late-paid contributions for the months of September, October, and November 2018, which were paid between the first day and fifteenth day of the month after their due date; and (3) 20 percent of the unpaid contributions. Because these rates are those prescribed by the Trust Agreements and the Guidelines, and are consistent with 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to the amount sought in liquidated damages. ECF Nos. 8-9 at 24; ECF No. 8-9 at 21; ECF No. 8-11 at 23; ECF No. 8-12 at 22; ECF No. 8-13 at 27; ECF No. 8-14 at 7.

Plaintiffs also seek interest on the unpaid contributions for each month, calculated pursuant to the Guidelines at 12 percent per annum from the date of delinquency through May 27, 2019. ECF No. 1-6 ¶ 19; ECF No. 8-1 at 2; ECF No. 8-4 ¶¶ 23–24; ECF No. 8-14 at 7. Plaintiffs assert that the amount of interest owed totals $3,002.58, comprised of interest assessed on late-paid and unpaid contributions for the months of July 2018 through March 2019. ECF No.

8-1 at 2; ECF No. 8-16. The monthly interest amounts that Plaintiffs seek are calculated pursuant to the method directed by the Guidelines. Therefore, pursuant to Section 502(g)(2)(C) of ERISA, Plaintiffs are entitled to $3,002.58 in interest.

Plaintiffs finally request $1,161.50 in attorneys' fees and $765.00 in costs. ECF No. 8-1 at 2; ECF No. 8-17 ¶ 7. Plaintiffs' request is made pursuant to Section 502(g)(2)(D) of ERISA, the Trust Agreements, and the Guidelines. *See* 29 U.S.C. § 1132(g)(2)(D); ECF No. 8-9 at 25; ECF No. 8-10 at 22; ECF No. 8-11 at 23; ECF No. 8-12 at 22; ECF No. 8-13 at 27–28; ECF No. 8-14 at 7. In support of their request, Plaintiffs offer the declaration of Charles W. Gilligan, counsel of record for Plaintiffs, who states that he has been practicing law since 1986. ECF No. 8-17 ¶ 1. Gilligan attests that he and a paralegal, Teresa Butler, performed work on this case and that the firm expended 8.75 hours on the matter. *Id.* ¶¶ 2–3. Gilligan further attests that his firm's negotiated fee with Plaintiffs is $310.00 per hour for attorney time and $122.00 per hour for paralegal time. *Id.* ¶ 5.

Gilligan's declaration includes an exhibit providing detail about each block of time spent working on this matter between February 15, 2019 and May 16, 2019. ECF No. 8-18. The Court finds the time billed and hourly rates applied to be reasonable, adequately documented, and commensurate with this District's Rules and Guidelines for Determining Attorneys' Fees in Certain Cases. *See* Loc. R. app. B (D. Md.). The Court will thus award Plaintiffs $1,161.50 in attorneys' fees.

Gilligan further declares that the filing fee for this case was $400.00 and that Plaintiffs incurred $365.00 in service costs for a private process server. ECF No. 8-17 ¶ 6. Another exhibit to the declaration shows the invoice for the process server. ECF No. 8-19. Because these costs

14

are adequately documented, Plaintiffs will be awarded $765.00 in costs, for a total award of $1,926.50 in fees and costs.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment, ECF No. 8, is granted. Plaintiffs are awarded $250,711.99 in damages against all Defendants, consisting of $179,526.64 in damages for breach of the Settlement Agreement and promissory note, $52,020.44 in unpaid contributions, $14,235.83 in liquidated damages, $3,002.58 in interest, and $1,926.50 in costs and attorneys' fees.[2] A separate Order shall issue.

Date: February  10, 2020                             __/s/_____
                                                     GEORGE J. HAZEL
                                                     United States District Judge

---

[2] The Court notes that Plaintiffs' Motion for Default Judgment requests $3,050.06 in interest. ECF No. 8 ¶ 4. The materials supporting the motion, however, consistently request $3,002.58. *See* ECF No. 8-1 at 2; ECF No. 8-16. The Court will therefore assume that the different figure stated in the Motion for Default Judgment is an error.